# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARIANNA MARINO, <br><br> Plaintiff, <br><br> v. <br><br> AVEN FINANCIAL, INC, <br><br> Defendant. | Case No. 25-cv-00503-BAS-DEB <br><br> **ORDER:** <br><br> **(1) DENYING DEFENDANT'S AMENDED MOTION TO COMPEL ARBITRATION (ECF No. 12); AND** <br><br> **(2) DENYING DEFENDANT'S MOTION TO COMPEL ARBITRATION (ECF No. 6)** |

Presently before the Court are Defendant Aven Financial, Inc's motions to compel arbitration (ECF Nos. 6, 12). For the reasons discussed herein, the Court **DENIES** Defendant's motions. (ECF Nos. 6, 12.)

I.  **BACKGROUND**

Plaintiff Arianna Marino is a user of Defendant's credit monitoring application. (ECF No. 13 ¶ 15.) Defendant's application has a feature that offers a weekly Starbucks gift card for users who maintain a credit score above 800. (ECF No. 13 ¶ 16.) While attempting to redeem the Starbucks reward, Plaintiff received nearly simultaneous notifications from credit reporting agencies that Defendant had accessed Plaintiff's credit reports and that Defendant "reported a New Home Equity Loan to your Experian Credit File." (ECF No. 13 ¶¶ 18–19.) Plaintiff had also received communications from Defendant regarding Plaintiff's "progress [in] paying off [her] Pennymac Loan Services Mortgage." (ECF No. 13 ¶ 38.) Plaintiff alleges that she "did not apply for any Home Equity Loan from Defendant and did not authorize Defendant to obtain Plaintiff's consumer credit report in connection with the extension of any credit" and that she "did not authorize any other person to apply for a Home Equity Loan using Plaintiff's information." (ECF No. 13 ¶¶ 20, 26.)

On March 4, 2025, Plaintiff initiated this class action against Defendant via a complaint (ECF No. 1) alleging causes of action for violations of the Fair Credit Reporting Act ("FCRA") and the California Consumer Credit Reporting Agencies Act ("CCCRA") for Defendant's alleged use of Plaintiff's credit reports to open a home equity loan ("HELOC loan") on behalf of Plaintiff. *See* 15 U.S.C. § 1681 *et. seq.*; Cal. Civ. Code § 1785.31(a)(3). Plaintiff later filed an amended complaint ("FAC"). (ECF No. 13.) In response, Defendant Aven Financial, Inc, filed motions to compel arbitration. (ECF Nos. 6, 12.) Since all points and authorities supporting Defendant's motions to compel arbitration accompany Defendant's first motion to compel arbitration, the Court considers Defendant's motion to compel arbitration (ECF No. 6) and amended motion to compel arbitration (ECF No. 12) together. In its motions to compel arbitration, Defendant argues

that Plaintiff agreed to refer the claims in this action to an arbitrator pursuant to the Terms of Service for Defendant's application. (ECF No. 6-1 at 14:7–16:3.) Plaintiff opposed Defendant's motions to compel arbitration (ECF No. 12)—arguing that the arbitration clause in the Terms of Service explicitly excepts claims involving HELOC loans, and if not, forced arbitration of HELOC claims would violate the Dodd-Frank Act, 15 U.S.C. §§ 1639c(e)(1) and 1639c(e)(3) ("Section 1414 of the Dodd-Frank Act"). (ECF No. 15.) Defendant filed a reply disputing Plaintiff's claim on the basis that Plaintiff has not sufficiently alleged that a home equity loan exists, and that Section 1414 of the Dodd-Frank Act does not bar referring questions about arbitrability to an arbitrator. (ECF No. 16.)

## II.   LEGAL STANDARD

The Federal Arbitration Act ("FAA") applies to contracts involving interstate commerce. 9 U.S.C. §§ 1–2. If a party is bound to an arbitration agreement that falls within the scope of the FAA, the party may move to compel arbitration in a federal court. *Id.* §§ 3–4; *see also Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004).

"[P]arties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010) (citing *Howsam*, 537 U.S. at 83–85, and *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452 (2003) (plurality opinion)). "Courts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (citing *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986)); *see also Howsam*, 537 U.S. at 84 (noting that a gateway dispute about whether the parties are bound by a given arbitration clause raises a question of arbitrability that is presumptively for the court to decide).

Once a district court determines that it, and not an arbitrator, should decide the claims' arbitrability, the court considers: (1) whether a valid arbitration agreement exists and, if so, (2) whether the agreement covers the relevant dispute. *See* 9 U.S.C. § 4; *Brennan*

*v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002)). "Generally, '[the] [FAA] establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" *Portland Gen. Elec. Co. v. Liberty Mut. Ins. Co.*, 862 F.3d 981, 985 (9th Cir. 2017) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983)). As the Court will discuss in further detail below, there are exceptions to the FAA's presumption of arbitrability.

## II.  DISCUSSION

### A.  Whether the Court Decides Arbitrability

The Court must first consider the "threshold question" whether it, or an arbitrator, has the authority to decide arbitrability. *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649–650 (1986). "Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *Id.* at 649. For the reasons below, the Court finds that Parties have not "clearly and unmistakably" provided that an arbitrator, rather than the Court, should decide whether the parties agreed to arbitrate. *Id.*

The Terms of Service arbitration agreement first states that "all . . . [d]isputes shall be referred to the arbitrator." (ECF No. 15-2 at 8.) "Disputes" include: "any disputes concerning the formation, existence, validity, enforceability, revocation or scope of this Arbitration Agreement, **any disputes about the arbitrability of any claim or cause of action**." (ECF No. 15-2 at 8 (emphasis added).)

However, the agreement excludes the following from its definition of "dispute" (ECF No. 15-2 at 8) (emphasis added):

> "Dispute" shall **not** include any **claim**…that arises out of or relates to … any credit agreement with You secured by a mortgage or deed of trust on your principal residence **including any Dispute arising out of or relating to any Home Equity Credit Card Account, Home Equity Loan**, or financial product secured by a mortgage or Deed of Trust on your principal residence.

|    |    |
|---|---|
| 1  | These two provisions provide conflicting guidance on whether the Court should decide the arbitrability of claims relating to HELOC loans.  On the one hand, the broad delegation clause seems to imply that Parties agreed for an arbitrator to decide arbitrability of "**any** claim or cause of action", rather than a judge. (ECF No. 15-2 at 8 (emphasis added).)  On the other hand, an arbitrator shall not decide "any Dispute arising out of or **relating to**…any Home Equity Loan." (*Id.* (emphasis added).)  According to Black's Law Dictionary, "relate" means "to have some connection to; to stand in relation to." RELATE, Black's Law Dictionary (12th ed. 2024).  The issue of whether the Court or an arbitrator should decide Plaintiff's claims appears to "relate to" the scope of the contractual exception for home equity loans from the definition of arbitrable "dispute[s]."  Another definition provided by Black's Law Dictionary of the word "relate" is "to have reference to." RELATE, Black's Law Dictionary (12th ed. 2024).  Here, the arbitration agreement references claims involving home equity loans as exemptions from the definition of "disputes" that are subject to mandatory arbitration.  It follows that, pursuant to the plain text of Parties' agreement, the Court can decide the arbitrability of claims relating to HELOC loans. |

The internal contradiction in Parties' agreement implies that Parties have not "clearly and unmistakably" provided that an arbitrator should decide the question of arbitrability of claims relating to HELOC loans. *See AT & T Techs., Inc.*, 475 U.S. at 649. Thus, the Court finds it possesses the authority to rule on the arbitrability of Plaintiff's claims based on the presumption that "the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *Id*.

### B. Whether Plaintiff's Claims are Arbitrable

Section 2 of the FAA provides: "A written provision in any…contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction…shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *See* 9 U.S.C. § 2.

The United States Supreme Court has interpreted Section 2 of the FAA to mean that there is a "presumption of arbitrability" when there is a contract that "contains an arbitration clause." *Guidry v. VITAS Healthcare Corp. of California*, No. 3:24-CV-00176-H-MMP, 2024 WL 2097903, at *2 (S.D. Cal. May 9, 2024) (quoting *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986).) Here, the Court finds that the Terms of Service contains an arbitration clause, which states "all…[d]isputes shall be referred to the arbitrator." (ECF No. 15-2 at 8.)

Where a contract contains a broad arbitration clause, there is a presumption of arbitrability of all claims. *Carruolo v. Rilko Enters.*, No. EDCV00-00920VAPSGLX, 2001 WL 1574809, at *3 (C.D. Cal. Nov. 6, 2001) (citing *AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 650 (1986). However, that presumption of arbitrability may be overcome in certain circumstances.

For instance, the presumption of arbitrability in Section 2 of the FAA can be overcome by an agreement between the parties with an express provision excluding a particular grievance from arbitration. *See AT & T*, 475 U.S. at 650; *see also Washington v. Freedom of Expression LLC*, No. CV-21-01318-PHX-MTL, 2023 WL 7048942, at *5 (D. Ariz. Sept. 28, 2023).

Additionally, Supreme Court has found that Congress can "overrid[e]" the pro-arbitration mandate in Section 2 of FAA through a "contrary congressional command" in another federal statute. *See CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 98 (2012) (quoting *Shearson/Am. Express Inc. v. McMahon*, 482 U.S. 220, 226 (1987)). "In determining whether statutory claims may be arbitrated, we first ask whether the parties agreed to submit their claims to arbitration, and then ask whether Congress has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue." *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 90 (2000).

Here, Plaintiff argues the claims in the current dispute are not arbitrable because: 1) Parties did not agree to submit her claims to arbitration in the Terms of Service, and 2)

Section 1414 of the Dodd-Frank Act precludes the current claims from arbitration. (ECF No. 15.) The Court considers each in turn.

### 1. Whether the Agreement Expressly Excludes Claims from Arbitration

First, the Court finds that pursuant to the plain language of the contract, Parties have not agreed to submit the claims in this dispute to arbitration. *See Green Tree Fin. Corp.- Alabama v. Randolph*, 531 U.S. at 90 (2000). As previously discussed, Parties' agreement explicitly exempts claims "arising out of or relating to any…Home Equity Loan" according to the plain terms of Parties' arbitration agreement. (ECF No. 15-2 at 8.) Again, "relate" means "to have some connection to; to stand in relation to." *See* RELATE, Black's Law Dictionary (12th ed. 2024). Plaintiff's FCRA claim is related to a home equity loan because the claim rests on Plaintiff's allegations that Defendant obtained Plaintiff's credit reports to take out a HELOC loan on Plaintiff's behalf without Plaintiff's express authorization. (ECF No. 13 ¶¶ 9, 19–20, 26–27, 31–32, 52.) Plaintiff's CCRAA claim is also related to a home equity loan, since the claim also rests on Defendant's alleged access and use of Plaintiff's credit reports to take out a HELOC loan on Plaintiff's behalf. (ECF No. 13 ¶ 83.) Therefore, the Court finds that Parties have not expressly agreed to submit Plaintiff's claims to arbitration. *See Green Tree Fin. Corp.*, 531 U.S. at 90.

### 2. Whether the Dodd-Frank Act Excludes Claims from Arbitration

Second, the Court finds that, even if Parties had "agreed to submit their claims to arbitration," "Congress has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue" in Section 1414 of the Dodd-Frank Act. *Id.*

Arbitration agreements are invalid to the extent that they interfere with other federal laws when those laws have clearly expressed a congressional intent to prohibit arbitration. *See e.g., Thomas-Lawson v. Carrington Mortg. Servs., LLC*, No. 2:20-CV-07301-ODW (EX), 2021 WL 1253578 (C.D. Cal. Apr. 5, 2021) (Section 1414 of the Dodd-Frank Act militates against arbitration for claims related to HELOC loans, even when there is an arbitration clause); *Ding v. Structure Therapeutics, Inc.*, 755 F. Supp. 3d 1200, 1212 (N.D.

Cal. 2024) (despite Parties' agreement to arbitrate all claims related to Plaintiff's employment with Defendant, the explicit prohibition of arbitration for sexual harassment claims in the federal Ending Forced Arbitration of Sexual Assault and Harassment Act (9 U.S.C. § 402(a)) trumps the FAA's presumption of arbitrability); *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 510–511 (2018) (provision of the NLRA which guarantees workers the right to engage in collective bargaining does not reflect a clearly expressed and manifest congressional intention to displace the FAA); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 629 (1985) (due to the Parties' agreement to arbitrate and the absence of express exemptions in either Sherman Act or the FAA for antitrust, the presumption of arbitrability in the FAA controls). "If such an intention exists, it will be discoverable in the text of the [statute], its legislative history, or an inherent conflict between arbitration and the [statute's] underlying purposes." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991).

Plaintiff asserts that her claims are barred from arbitration by Section 1414 of the Dodd-Frank Act, because they relate to a HELOC loan and residential mortgage account. (ECF No. 15 at 15:25–16:11.) The Court agrees. The language in Section 1414 of the Dodd-Frank Act explicitly provides that the right to vindicate claims relating to home equity loans in court cannot be abrogated by an arbitration agreement.

Compare the federal law at issue in *Epic Sys. Corp.* (holding to compel arbitration) and the federal law at issue in *Ding* (holding against compelling arbitration). *Ding*, 755 F. Supp. 3d at 1212; *Epic Sys. Corp,* 584 U.S. at 511.

*Epic Sys. Corp,* 584 U.S. at 511:

Section 7 of the [National Labor Relations Act ("NLRA")]…guarantees workers "the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection." 29 U.S.C. § 157.

*Ding*, 755 F. Supp. 3d at 1212 (emphasis added):

> The [Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act ("EFAA")], which amends the Federal Arbitration Act, provides:
> Notwithstanding any other provision of this title, at the election of the person alleging conduct constituting a sexual harassment dispute or sexual assault dispute, . . . no **predispute arbitration agreement** or **predispute joint-action waiver shall be valid or enforceable** with respect to a case which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute or the sexual harassment dispute. 9 U.S.C. § 402(a)

Section 7 of the NLRA—the law at issue in *Epic Sys. Corp*—does not explicitly mention whether the right to collectively bargain can be arbitrated. *Epic Sys. Corp,* 584 U.S. at 511. However, the EFAA—the law at issue in *Ding*—does explicitly mention that arbitration agreements cannot preclude sexual assault or harassment disputes from being litigated in federal court. *Ding*, 755 F. Supp. 3d at 1212.

Like the EFAA and unlike the NLRA, Section 1414 of the Dodd-Frank Act explicitly excludes claims relating to home equity loans from being subject to forced arbitration.

15 U.S.C. § 1639c(e)(1) (emphasis added) states:

> No residential mortgage loan and **no extension of credit under an open end consumer credit plan secured by the principal dwelling of the consumer may include terms which require arbitration** or any other nonjudicial procedure as the method for resolving any controversy or settling any claims arising out of the transaction.

15 U.S.C. § 1639c(e)(3) (emphasis added) states:

> No provision of any residential mortgage loan or of any extension of credit under an open end consumer credit plan secured by the principal dwelling of the consumer, and no **other agreement between the consumer and the creditor relating to the residential mortgage loan or extension of credit** referred to in [§ 1639c(e)(1)], **shall be applied or interpreted** so as to bar a consumer from bringing an action in an appropriate district court of the United States, or any other court of competent jurisdiction, pursuant to section 1640 of this title or any other provision of law, for damages or other relief in connection with any alleged violation of this section, any other provision of this subchapter, or any other Federal law.

"Open end consumer credit plan[s] secured by the principal dwelling of the consumer" include home equity lines of credit (HELOC). *See Steckel v. SunTrust Bank,*

No. 813CV01661T27TGW, 2013 WL 12331218, at *1 (M.D. Fla. Oct. 9, 2013) ("Section 1414 of the Dodd Frank Act, codified at 15 U.S.C. § 1639c(e), restricts arbitration as a method for resolving any dispute involving a HELOC collateralized by a customer's home"); *Junka v. Suntrust Bank,* No. 114CV01056WBHAJB, 2014 WL 12284032, at *4 (N.D. Ga. Oct. 31, 2014), *report and recommendation adopted*, No. 1:14-CV-1056-WBH, 2015 WL 11364352 (N.D. Ga. Jan. 8, 2015) (same). It follows that under Section 1414 of the Dodd-Frank Act, no agreement "related to" a HELOC loan can be "interpreted so as to bar a consumer from bringing an action in an appropriate district court of the United States."

Here, the Court finds that the plain text of Section 1414 of the Dodd-Frank Act dictates that the arbitration agreement is related to Plaintiff's claims. The arbitration agreement in the Terms of Service is "relate[d] to" Plaintiff's claims because the Terms of Service govern Plaintiff's use of Defendant's application. Plaintiff used Defendant's application to attempt to claim a Starbucks Reward, which led to Defendant allegedly taking out a HELOC loan on Plaintiff's behalf. (ECF No. 13 ¶¶ 15–19.) *See* RELATE, Black's Law Dictionary (12th ed. 2024) ("relate" can mean "to have some connection to; to stand in relation to"). Further, as discussed, the Parties' arbitration agreement explicitly references home equity claims, and so, is related to HELOC loans. *See id.* ("relate" can mean "to have reference to"). Because the agreement is related to the subject of HELOC loans, it cannot be "interpreted so as to bar [Plaintiff] from bringing an action in an appropriate court in the United States," according to Section 1414 of the Dodd-Frank Act. The Court, thus, interprets the plain text of Section 1414 of the Dodd-Frank Act to mean Plaintiff's HELOC-related claims cannot be subject to mandatory arbitration.

Construing the Dodd-Frank Act to allow the Court to decide Plaintiff's HELOC-related claims is also consistent with the Act's legislative purpose. The public law originally effectuating Section 1414 of the Dodd-Frank Act states that its purpose is "to safeguard the consumer in connection with the utilization of credit by requiring full disclosure of the terms and conditions of finance charges in credit transactions or in offers

to extend credit." Truth in Lending Act, Pub. L. No. 90-321 (1968).  Here, it is consistent with the Dodd-Frank Act's purpose of consumer protection and transparency to ensure that the Court can decide upon Plaintiff's claims involving HELOC loans, including their arbitrability, and not an arbitrator.

* * *

In sum, the Court first finds that the arbitration agreement in the Terms of Service does not clearly require the arbitrator to decide the arbitrability of Plaintiff's claims, and thus, enables the Court to decide arbitrability.  Next, the Court finds that the Terms of Service cannot be interpreted to preclude Plaintiff's claims from judicial review based on the plain text of the Parties' agreement and based on Section 1414 of the Dodd-Frank Act.

### III. CONCLUSION

For the reasons discussed, the Court **DENIES** Defendant's motions to compel arbitration (ECF Nos. 6, 12).

**IT IS SO ORDERED.**

DATED: October 23, 2025

Hon. Cynthia Bashant, Chief Judge
United States District Court